IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| STEVEN L. MARKOS, TIFFANY DAVIS, and GREGORY PAGE, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>WELLS FARGO BANK, N.A.,<br><br>Defendant. | Case No. 2:16-mc-01398<br><br>UNDERLYING LITIGATION PENDING IN N.D. GEORGIA<br>Case No. 1:15-cv-01156-LMM |

**PLAINTIFFS'/RESPONDENTS' OPPOSITION TO WANDA YDE'S MOTION TO QUASH AND FOR PROTECTIVE ORDER**

**I.   INTRODUCTION**

This miscellaneous action arises from a class action settlement ("Settlement") pending before—and preliminarily approved by—the Honorable Leigh Martin May in the Northern District of Georgia.  Out of millions of class members, Petitioner Wanda Yde submitted one of only nine objections to a Settlement in which more than 406,000 class members have made claims.  *See Markos* Dkt. No. 59-5.  The purportedly *pro se* objection to the Settlement makes boilerplate arguments that the proposed attorneys' fees and class representative awards are too high. Ms. Yde's objection was, however, "ghost written" by attorney Christopher Bandas, who, as detailed below, is a notorious "professional objector"—i.e. grifter—with a documented and extensive track record of making specious and vexatious objections to class action settlements solely for purposes

1333980.3

of extracting money from class counsel.[1]  Mr. Bandas's clients sometimes have no idea that they are being put forward as objectors at all.  And even if they know that they're objecting, they sometimes have no clue what their objections actually are and sometimes even disagree with the objections Mr. Bandas submits on their behalf.

Moreover, Mr. Bandas is once again trying to avoid formally appearing in any proceeding relating to this case in a strategic attempt to avoid being before the jurisdiction of any court.  It was not until after Plaintiffs filed a motion asking that the Yde objection be stricken unless Mr. Bandas file an appearance that he filed a *pro hac vice* motion in the Northern District of Georgia.  And although he practices in the Southern District of Texas, Mr. Bandas hired separate counsel to prosecute this motion and defend Ms. Yde's deposition.

Ms. Yde's motion to quash and for a protective order should be denied as the subpoena is not overly burdensome, especially in light of the accommodations to Ms. Yde's schedule.  The subpoena aims to explore the motivation, propriety, and basis of Ms. Yde's objection, including the relationship between Mr. Bandas and Ms. Yde, so that Judge may consider these facts in assessing her objection and motivations for it, and determining whether to finally approve the Settlement at the final approval hearing set for January 17, 2017.  The deposition and request for production of documents are justified by Mr. Bandas's history of filing baseless objections without his clients' informed

---

[1] On December 20, 2016, Mr. Bandas submitted a virtually identical ghost-written objection in *Cross v. Wells Fargo Bank, N.A.*, No. 1:15-cv-01270, Dkt. No. 71 (N.D. Ga.).

consent, and are consistent both in terms of scope and length with those permitted by other courts faced with Bandas's abusive practices.

## II. BACKGROUND

The underlying case is a class action brought pursuant to the Telephone Consumer Protection Act, 47 U.S.C. §227 *et seq*. Plaintiffs allege that Wells Fargo made improper automated calls in connection with collection of alleged mortgage debts. The parties settled the case after mediation under the auspices of well-respected private mediator Hunter Hughes, and Judge Leigh Martin May issued an order preliminarily approving the Settlement on September 7, 2016. As part of the Amended Preliminary Approval Order entered, Judge May specifically found that "[t]he Parties will have the right to depose any objector to assess whether the objector has standing." Dkt. No. 4-2, at ¶ 15.

On November 25, 2016, class member Wanda Yde filed a purportedly *pro se* objection to the Settlement. Dkt. No. 1-1. In it, she acknowledged that she "is represented by and has sought legal advice and assistance in this matter" from Christopher Bandas, a notorious serial objector. *Id.* at 4. However, Mr. Bandas, an attorney, did not appear on her behalf, nor did he seek admission *pro hac vice*, nor hire local counsel in Georgia to appear on Yde's behalf.

On December 13, 2016, Plaintiffs issued a subpoena to Ms. Yde from the U.S. District Court for the Northern District of Georgia to depose her pursuant to the Judge May's Amended Preliminary Approval Order. The subpoena also requested documents regarding Ms. Yde's relationship with Mr. Bandas.

Plaintiffs issued the subpoena in part due to Mr. Bandas's track record of filing objections that do not reflect the views of his clients. *See Chambers v. Whirlpool Corp.*, No. 11-1733, 2016 WL 5922456, at *8 (C.D. Cal. Oct. 11, 2016), *appeals filed* (9th Cir. Nos. 16-56666, 16-58884, 16-58886, 16-56688, 16-56694). The subpoena set a deposition in Corpus Christi, Texas, a location only a short distance from both Ms. Yde's home and Mr. Bandas's office. *Id.*

On December 19, 2016, after Class Counsel became concerned that Ms. Yde was evading service, counsel asked Mr. Bandas whether he would accept service. *See* Declaration of Daniel M. Hutchinson at ¶¶ 4-6 & Ex. B. Class Counsel also stated that they would cooperate with Mr. Bandas in identifying a date and time for the deposition to proceed convenient to Ms. Yde and Mr. Bandas. *Id.* Because the final approval hearing is set for January 17, 2017, Class Counsel insisted that the deposition occur before that date: in the first two weeks of January.

Mr. Bandas responded that he was "[h]appy to accept service" and confirmed that "we will cooperate fully." *Id.* at ¶ 7 & Ex. C. It became apparent that Mr. Bandas (and, by extension, Ms. Yde) had no intention of cooperating. Although the subpoena for which Mr. Bandas accepted service issued from the Northern District of Georgia, Mr. Bandas stated that "any discovery issues pertaining to this deposition have to be brought before the Court in the Southern District, Corpus Christi Division." *Id.* He further stated that "the Court here routinely limits objector depositions to 45 minutes" and that "to the extent you seek to depose my client beyond standing and the basis for her

objection, we will bring a motion for sanctions against you, your client, and your firm." *Id.*

Class Counsel asked Mr. Bandas to confirm whether Ms. Yde could appear for the date, time, and location noticed, and informed Mr. Bandas that counsel would respond to his other inquiries once the date was set. *Id.* at ¶ 9 & Ex. D. Mr. Bandas responded with a barrage of after-hours emails and a phone call insisting that the parties meet and confer immediately. *Id.* at ¶¶ 10-11 & Exs. E, F, G, H, I, J, K, L, & M. His emails threatened that, if counsel did not speak with him immediately, he would unilaterally close the meet and confer. *Id.*

On December 21, 2016, Class Counsel filed a motion in the Northern District of Georgia to strike Ms. Yde's ghost written objection unless Mr. Bandas filed an appearance. *Markos* Dkt. No. 61.

Also on December 21, 2016, Class Counsel confirmed their agreement to limit any deposition to four hours, as Mr. Bandas had agreed to an objector deposition of that length in the *Chambers* action. *Id.* at ¶ 12 & Exs. N, O, P, Q, R, S, T.[2]  Mr. Bandas confirmed that "I have talked to my client about deposition dates," that he retained "separate and independent counsel for Ms. Yde, who will be presenting her for deposition," and that "[c]ounsel for her deposition will be in touch directly with you in the next week or so about a day the week of January 9." *Id.*

---

[2] Ms. Yde's counsel did not submit a complete version of this meet-and-confer correspondence.

The following day, new counsel for Ms. Yde offered that, if Class Counsel agreed to re-notice the deposition, Ms. Yde would provide a date for Ms. Yde's deposition the following day.  *Id.* at ¶¶ 13-14 & Exs. U, V.  Class Counsel agreed so long as Ms. Yde provided a date within the first two weeks of January.  *Id.*  Despite that agreement, on December 22 Ms. Yde's new counsel filed the instant motion to quash.

On December 28, 2016, Mr. Bandas filed an appearance in the underlying matter. *Markos* Dkt. No. 67. Class Counsel asked Mr. Bandas whether, in light of his *pro hac vice* filing in N.D. Ga., he intended to proceed in the *Markos* Court rather than this Court.  *Id.* at ¶¶ 17-18 & Ex. X.  Mr. Bandas refused to respond and so confirmed he had no intention to transfer his motion to quash to N.D. Ga.  *Id.*

Later that day, an attorney associated with Mr. Bandas emailed Class Counsel to confirm "Jan. 10th just opened up."  *Id.* at ¶ 19 & Ex. Y.  Class Counsel therefore noticed Ms. Yde's deposition for January 10, 2016.  *Id.*  Mr. Bandas thereafter stated that the communication was in error, accused Class Counsel of violating Texas' Snap-Back provision, and threatened to "seek immediate relief from the Court."  *Id.*  As of this filing, neither Ms. Yde nor her counsel have confirmed any date for her deposition.

## III.  ARGUMENT

Plaintiffs/Respondents seek a simple, four-hour deposition of Ms. Yde, at a date and location convenient to her and her counsel, to explore her standing to object, her understanding of the Settlement to which she purports to object and the nature of her objections to it, the nature of her relationship with Mr. Bandas, her understanding of his

history and practice, any promises he made to her with respect to her objecting, and her awareness of her individual tax consequences for sums Mr. Bandas might receive.

Mr. Bandas is a serial objector whose business is to file baseless objections in order to extort payment from plaintiffs' counsel. The Yde subpoena is appropriate in scope because it targets information regarding Ms. Yde's relationship with Mr. Bandas, information that is relevant to Judge May's review of the Yde objection and whether it is simply an attempt to hold a Settlement involving millions of class members hostage for Mr. Bandas's own personal gain. The motion to quash and for entry of a protective order should be denied. Alternatively, the motion should be transferred to the Northern District of Georgia because Judge May is in the best position to determine the appropriate scope of a deposition that her prior order expressly authorizes.

    **A.**    **Mr. Bandas Is A Well-Known Professional Objector Who Files Baseless Objections To Hold Settlements Hostage And Extort Money From Plaintiffs' Attorneys.**

Mr. Bandas is a professional objector. *See* https://www.serialobjector.com/persons/4. Professional objectors like Bandas are grifters: "lawyers who file stock objections to class action settlements—objections that are most often nonmeritorious—and then are rewarded with a fee by class counsel to settle their objections." *In re Elec. Books Antitrust Litig.*, 639 F. App'x 724 (2d Cir. 2016) (citation and internal punctuation omitted); *see also in re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, No. 1:08-wp-65000, 2016 WL 5338012, at *21 n.18 ("A few serial objectors offer relevant arguments and file well-researched legal briefs, but many are pure grifters who make any argument they can think of.").

Bandas has repeatedly been reprimanded by courts for filing objections not "to effectuate changes to settlements, but . . . for his own personal financial gain; he has been excoriated by Courts for this conduct." *In re Cathode Ray Tube Antitrust Litig.*, 281 F.R.D. 531, 533 (N.D. Cal. 2012). His objections are regularly dismissed as unfounded. *See, e.g.*, *In re Hydroxycut Mktg. & Sales Practices Litig.*, No. 09-1088, 2013 WL 5275618, at *5 (S.D. Cal. Sept. 17, 2013) (striking Mr. Bandas's objections and finding that they "were filed for the improper purpose of obtaining a cash settlement in exchange for withdrawing the objections"); *In re Wal-Mart Wage & Hour Emp't Prac. Litig.,* No. 06-00225, 2010 U.S. Dist. LEXIS 21466, at *16-17 (D. Nev. Mar. 8, 2010) (finding that Mr. Bandas had submitted objections that were "not supported by law or the facts and are indeed meritless" and that he had "a documented history of filing notices of appeal from orders approving other class action settlements, and thereafter dismissing said appeals when they and their clients were compensated by the settling class or counsel for the settling class"). While Mr. Bandas claims that he "prevailed" in a limited number of his scores of objections, in each instance he cites, he was not the primary objector's counsel. *Eubank v. Pella Corp.*, 753 F.3d 718, 719 (7th Cir. 2014) (listing Theodore H. Frank of the Center for Class Action Fairness as counsel for appellant, not Mr. Bandas); *In re Baby Prod. Antitrust Litig.*, 708 F.3d 163, 169 (3d Cir. 2013) (listing Theodore H. Frank as lead counsel for appellant); *Dennis v. Kellogg Co.*, 697 F.3d 858, 861 (9th Cir. 2012) (listing Darrell Palmer as lead counsel for appellant); *Litwin v. iRenew Bio Energy Sols., LLC*, 226 Cal. App. 4th 877, 880, 172 Cal. Rptr. 3d 328, 329 (2014), as modified (May 29, 2014) (not listing Mr. Bandas as objector's counsel).

Just recently, Bandas was reprimanded for filing an objection without even speaking to his client and making attacks on a settlement contradicted by his client during her deposition. *See Chambers*, 2016 WL 5922456, at *8. Those are the very topics Plaintiffs/Respondents here seek to explore with Ms. Yde. And just this month, Bandas's course of conduct was the subject of a RICO complaint filed against him and his collaborators. *See Edelson PC v. The Bandas Law Firm PC*, No. 1:16-cv-11075, Dkt. No. 1 (N.D. Ill.).

### B. Mr. Bandas Files Objections Without the Knowledge or Informed Consent of his Clients.

Mr. Bandas files objections that do not reflect the views of his clients. In *Chambers*, Mr. Bandas's client testified that she never spoke with Mr. Bandas or any other lawyer working with him before he filed an objection in her name. Dkt. No. 1-4 at 34-38. She spoke only with Bandas's paralegal, a long-time friend. *Id.* When asked about the substance of "her" objection, Bandas's client disclaimed it. She had no issue with the aspects of the settlement to which she had objected, including the relief provided to class members, and the fees awarded to counsel. *Id.* at 76-77, 150, 212. And she had never been informed of Bandas's notorious reputation. *Id.* at 153-73. After learning these facts, the Court in that case nonetheless considered the objection and found it "without merit." *Chambers*, 2016 WL 5922456, at *8.

It is also an open question whether Bandas's entire *modus operandi* also harms his own clients. When he is successful and obtains a ransom from class counsel, his client likely is on the hook for taxes on the full amount Bandas obtains, even if Bandas keeps

the lion's share. *See Comm'r v. Banks*, 543 U.S. 426, 429 (2005) (holding that, when a litigant's recovery constitutes taxable income, such income includes the portion of the recovery paid to the litigant's attorney as a contingent fee). In a currently pending case in the Southern District of New York, Mr. Bandas ghost-authored a frivolous objection (just as he has done in this case). Hutchinson Decl. Ex. Z, at 4. When the judge pressed Bandas on whether he shared any of the proceeds of his cases with one of his frequent-filer objector clients, Bandas had a convenient case of amnesia. *Id.* at 24 ("The Court: Are you seriously telling me you don't remember? Mr. Bandas: I am seriously telling you I don't remember, your Honor. The Court: That does not have the ring of truth."). Whether Mr. Bandas complies with tax laws governing the money he extorts may well be beyond the scope of a deposition of his client; whether he informs his client of her potential tax liability and need to comply with the tax laws is not.

### C. Given Mr. Bandas's Current Actions and Track Record, the Scope of the Yde Subpeona is Proper.

The Yde subpoena aims to explore the basis of Ms. Yde's objection, including her relationship with Mr. Bandas. Given the real possibility that Ms. Yde knows nothing about the actions Mr. Bandas has taken on her behalf, has no real objection to the Settlement, and may face serious tax consequences if Mr. Bandas successfully extorts a payment for himself, the subpoena is proper. Judge May's order states that objector depositions are allowed on the issue of standing, the order does not expressly limit depositions to that subject. Respectfully, Judge May is best positioned to determine the appropriate scope of any deposition conducted pursuant to her order.

Courts across the country have relied upon this type of discovery when rejecting objections made by Bandas and other serial objectors like Bandas. In *In re Cathode Ray Tube Antitrust Litigation*, Mr. Bandas ghost-wrote an objection just like he did here. When Plaintiffs' counsel sought discovery, Mr. Bandas's "pro se" client resisted. The Court found that the types of information sought here are proper subjects of discovery:

> The information sought by IP Plaintiffs, including the bases for Hull's objection and his claimed standing to object, are clearly relevant to the Settlement now before the Court. IP Plaintiffs are willing to limit Hull's deposition to four hours, and are willing to take it in Denver, Colorado. The requests for documents focus solely on the objector's standing, the bases for his current objections, his role in objecting to this and other class settlements, and his relationships with the counsel that are believed to be behind the scenes manipulating him. As such, the requested information and documents are relevant, needed and reasonably narrowly tailored.
>
> Hull's papers do not list counsel, but IP Plaintiffs showed that Hull previously objected to another class settlement in which he was assisted by attorney Christopher Bandas, a "professional" or "serial" objector located in Corpus Christi, Texas. In fact, Hull's objection in this case was postmarked in Corpus Christi, Texas, even though Hull lives and works in Denver, Colorado. Bandas routinely represents objectors purporting to challenge class action settlements, and does not do so to effectuate changes to settlements, but does so for his own personal financial gain; he has been excoriated by Courts for this conduct. See Dkt. No. 1089–1 (Appendix A thereto listing courts' comments regarding Bandas's conduct).
>
> In light of these facts and questions about the bona fides of Hull's objections, IP Plaintiffs justifiably served the discovery on Hull in order to explore not only the bases for Hull's objections, but to explore his relationship with Bandas and his practices with regard to asserting settlement objections.

281 F.R.D. at 533. *See also In re Netflix Privacy Litig.*, No. 5:11-CV-00379-EJD, 2013 WL 6173772, at *2 (N.D. Cal. Nov. 25, 2013) ("Discovery regarding objections to a settlement agreement may be used to seek information regarding the objector's standing, the bases for the objections, his role in objecting to this and other class settlements, and

his relationships with the counsel that may affect the merits of the objection."); *In re Yahoo Mail Litig.*, No. 13-CV-4980-LHK, 2016 WL 4474612, at *8 (N.D. Cal. Aug. 25, 2016), *appeal filed* (9th Cir. No. 16-16759) (finding deposition testimony revealing that an objector had objected in "25 federal cases across the country" compelling in rejecting that objector's arguments).

In this case in particular, there is reason to doubt the basis of Ms. Yde's objection: Bandas not only resisted filing an appearance in the Northern District of Georgia until he was faced with a motion asking the Court to require him to do so, he hired another lawyer to represent Ms. Yde in *these* miscellaneous proceedings. There exists no legitimate reason for a lawyer to avoid appearing before a court to represent his client. Under these circumstances, as in *In re CRT,* the Court should permit inquiry into matters such as the "objector's standing, the bases for his current objections, his role in objecting to this and other class settlements, and his relationships with [Chris Bandas, who is] believed to be behind the scenes manipulating him." *Id*. at 533.   Plaintiffs' counsel also intends to inquire as to the fee structure between Ms. Yde, Mr. Bandas, Mr. Swallow (who filed this miscellaneous action) and local counsel in the underlying matter, what (if anything) Mr. Bandas promised Ms. Yde and whether Ms. Yde knows the possible tax consequences of her objection.

D.     **Plaintiffs' Proposed Timeframe for the Deposition is Reasonable.**

Yde's motion argues that the timeframe for her deposition is "unreasonable." But Ms. Yde or her attorneys knew or should have known that the final approval hearing was set for January 17, 2017, and that Judge May expressly permitted objector depositions.

Plaintiffs noticed the deposition for a location close to Ms. Yde's home, and offered to hold the deposition at a date and time convenient for her schedule, so long as the deposition occurs before the final approval hearing.

      **E.**    **The Subpeona Duces Tecum is Proper.**

Ms. Yde argues that the documents sought are (1) irrelevant and (2) privileged. For the reasons explained above, Ms. Yde's communications and relationship with Mr. Bandas (or lack thereof) are relevant to the basis of her objection. To the extent that the requested documents are privileged, Ms. Yde, with the assistance of counsel, can and should produce a privilege log identifying the documents withheld and the basis of the privilege asserted.

      **F.**    **Alternatively, the Court Should Transfer this Discovery Dispute to the Northern District of Georgia.**

This Court should deny the motion to quash outright. However, in the event that the Court is not inclined to rule on the merits, it should transfer the motion to the Northern District of Georgia pursuant to Fed. R. Civ. P. 45(f). Ms. Yde submitted to the jurisdiction of the Northern District of Georgia by filing her objection there. And Mr. Bandas did so by accepting service of a subpoena issued by that Court. Judge May is in the best position to determine the scope of discovery permitted by her order, and whether permitting the requested discovery will be helpful in her evaluation of the objection.

**IV.**    **Conclusion**

For these reasons, Plaintiffs/Respondents respectfully request that the Court deny the motion to quash and for a protective order. Alternatively, they respectfully submit

that the Court should transfer this action to the Northern District of Georgia so that the judge presiding over the Settlement may decide these issues.

Respectfully submitted,

Dated: December 30, 2016.   /s/John M. Martinez_____
John M. Martinez
Attorney-in-Charge
Texas Bar No. 24010212
Southern District of Texas Bar No. 23612.
Hilliard Munoz Gonzalez LLP
719 S. Shoreline Blvd. #500
Corpus Christi, TX 78401
Telephone: (361) 882-1612
Facsimile: (361) 882-3015
Email: john@hmglawfirm.com

Daniel M. Hutchinson (*pro hac vice* anticipated)
Lieff Cabraser Heimann & Bernstein, LLP
Email: dhutchinson@lchb.com
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008

Jonathan D. Selbin (*pro hac vice* anticipated)
Lieff Cabraser Heimann & Bernstein, LLP
Email: jselbin@lchb.com
250 Hudson Street, 8th Floor
New York, NY 10013
Telephone: (212) 355-9500
Facsimile: (212) 355-9592

Alexander H. Burke (*pro hac vice* anticipated)
Burke Law LLC
Email: Aburke@BurkeLawLLC.com
155 N. Michigan Ave., Suite 9020
Chicago, IL 60601
Telephone: (312) 729-5288
Facsimile: (312) 729-5289

## CERTIFICATE OF SERVICE

I hereby certify that on this day, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will automatically send notification of such filing to all attorneys of record.

December 30, 2016.

*/s/ John M. Martinez*